# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| CHRISTOPHER SKUBIK,<br>　　　　　Appellant, | DOCKET NUMBER<br>PH-1221-16-0347-W-1 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>　　　　　Agency. | DATE: February 9, 2023 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Christopher Skubik</u>, Havre de Grace, Maryland, pro se.

<u>Justin D. Wilde</u>, Aberdeen Proving Ground, Maryland, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we VACATE the initial decision and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND this matter to the Northeastern Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2    The appellant is a GS-14 Supervisory Operations Research Analyst (ORA) and the branch chief of the Systems Analysis Branch in the agency's Cost & Systems Analysis Division, Resource Management Office, Communications-Electronics Command (CECOM).  Initial Appeal File (IAF), Tab 1 at 1; Tab 22 at 6; Tab 45, Hearing Compact Disc (HCD) 2 (testimony of the appellant); *see* IAF, Tab 41 at 4.  In October 2014, the agency advertised a GS-15 supervisory ORA position; the incumbent was to serve as the division chief of the Cost & Systems Analysis Division.  IAF, Tab 6 at 14-24, Tab 22 at 6, HCD 2 (testimony of the appellant's first-level supervisor).  The appellant's former first-level supervisor, who served as the CECOM deputy director, was the selecting official for the position.  HCD 2 (testimony of the appellant's first-level supervisor).[2]  She first selected an applicant who declined the position; she then selected a second applicant who accepted the position, but the offer was later rescinded because the applicant did not meet the educational requirements of the position, and no further selections were made.  IAF, Tab 38 at 12, HCD 2 (testimony of the appellant's first-level supervisor).  The appellant applied and interviewed for the position, but he was not selected.  IAF, Tab 6 at 12.

¶3    After learning of his nonselection in January 2015, the appellant expressed concerns about the selection process to his first-level supervisor; his former second-level supervisor, who served as the CECOM director[3]; the deputy to the commanding general; and a staff member of the agency's Office of Inspector

[2] The appellant's former first-level supervisor retired from the Federal service.  HCD 2 (testimony of the appellant's first-level supervisor).

[3] The appellant's former second-level supervisor has since transferred to another position within the agency.  IAF, Tab 44, HCD 1 (testimony of the appellant's second-level supervisor).

General (OIG). IAF, Tab 8 at 12-14. In April 2015, the agency re-advertised the GS-15 supervisory ORA position. IAF, Tab 6 at 36-47. The appellant's second-level supervisor served as the selecting official and selected the same applicant to whom the position was last offered, but the offer was subsequently rescinded and the vacancy announcement cancelled. IAF, Tab 38 at 13-14. The appellant again applied and interviewed for the position, but he learned in May 2015 that he was not selected. IAF, Tab 8 at 19.

¶4 On June 17, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC) in which he alleged that his first- and second-level supervisors had provided unauthorized preferences or advantages to applicants external to his division during the selection processes for the GS-15 supervisory ORA position and retaliated against him for raising concerns about the first selection process. IAF, Tab 1 at 5, Tab 8 at 4-24. In letters dated April 8, 2016, OSC informed the appellant that it had closed its file regarding the complaint and notified him of his appeal rights. IAF, Tab 1 at 7-9.

¶5 On June 9, 2016, the appellant filed an IRA appeal with the Board alleging that, in retaliation for raising concerns about unfair and prohibited hiring practices to his chain of command, he was subjected to the following personnel actions: (1) on January 12, 2015, his first-level supervisor sent him an email threatening him with disciplinary action; (2) on May 27, 2015, he was not selected for the GS-15 supervisory ORA position; and (3) he was excluded from key decisions within his division, which included his first-level supervisor's failure to include him in decisions over assigning interns and selecting staff members to attend a September 2015 conference.[4] IAF, Tab 1 at 5, Tab 8 at 4-24,

---

[4] The appellant acknowledged that his OSC complaint alleged that prohibited personnel practices occurred during the first GS-15 supervisory ORA selection process, but that he was only contesting the personnel actions described above, which he alleged were taken in retaliation for his voicing concerns after the first selection process. IAF, Tab 13 at 4. The administrative judge subsequently dismissed any allegations regarding the first nonselection process because it occurred prior to any disclosures. IAF, Tab 16.

Tab 9 at 29, Tab 13 at 4, 10, 18. The appellant requested a hearing. IAF, Tab 1 at 2. In her order summarizing the telephonic prehearing conference, the administrative judge stated that, "it appears that the agency has conceded that the appellant has made what he believes to be a protected disclosure and has met the knowledge and timing test with regard to such disclosure in relation to the agency's selection decision," and she dictated that the hearing should focus on whether the agency could prove by clear and convincing evidence that it would have made the same selection decision and taken the same personnel actions absent the appellant's protected activity. IAF, Tab 29 at 4. Neither party objected to this portion of the order.

¶6        Following a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. IAF, Tab 46, Initial Decision (ID). The administrative judge found that, as to the May 27, 2015 nonselection, the agency conceded that the appellant made what he believed to be a protected disclosure and met the knowledge/timing test. ID at 11. The administrative judge then found that the January 12, 2015 email and the appellant's supervisors' failure to assess his leadership skills before he attended a leadership program were not personnel actions. ID at 12-13, 16. Next, she found that the appellant met the knowledge/timing test concerning the intern assignment and conference attendance decisions. ID at 13-16. However, the administrative judge found that that the agency showed by clear and convincing evidence that it would have taken the same actions absent the appellant's protected activity. ID at 38. In support of her finding, she found that the evidence unequivocally supported management's decisions during the second selection process to assign interns and to choose staff to attend the conference. ID at 17-35. She also found that, while the appellant's first- and second-level supervisors had some motive to retaliate, there was no evidence of retaliation, and there was little evidence of how the agency treated similarly situated non-whistleblowers. ID at 35-38.

¶7    The appellant has filed a petition for review alleging that the administrative judge erred in finding that the January 12, 2015 email and his supervisors' failure to complete the leadership assessment were not personnel actions and challenging numerous findings that the administrative judge made in concluding that the agency proved by clear and convincing evidence that it would have made the nonselection, intern assignment, and conference attendance decisions absent the appellant's protected activity.  Petition for Review (PFR) File, Tab 1.  The agency has filed an opposition to the petition.  PFR File, Tab 3.  As set forth below, we find that the administrative judge erred in failing to identify and analyze the appellant's alleged protected disclosure and, as a result, we remand this matter for further adjudication.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant exhausted his administrative remedies before OSC and established Board jurisdiction over his appeal.

¶8    To establish Board jurisdiction over an IRA appeal brought pursuant to the Whistleblower Protection Enhancement Act of 2012 (WPEA), the appellant must exhaust his administrative remedies before OSC and make nonfrivolous allegations that:  (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A).[5]    5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).  The administrative judge dismissed for lack of jurisdiction any allegations of wrongdoing that occurred prior to any allegedly protected

---

[5] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017.  Section 1097 of the NDAA amended various provisions of Title 5 of the U.S. Code.  Our decision to remand this appeal would be the same under both pre- and post-NDAA law.

disclosures. IAF, Tab 16. The administrative judge implicitly found that the appellant exhausted his administrative remedies before OSC and made nonfrivolous allegations sufficient to establish Board jurisdiction over the appeal as to the remaining claims. IAF, Tab 16, Tab 29 at 1-2; ID at 8. We discern no basis for disturbing the administrative judge's implicit findings on exhaustion. In particular, we find that the written record, specifically the appellant's OSC complaint, shows that he exhausted his administrative remedies before OSC as to the claims at issue. IAF, Tab 8 at 4-24, Tab 13 at 4.

¶9 Additionally, in dismissing allegations of wrongdoing that occurred before any allegedly protected disclosures, the administrative judge discussed the evidence the appellant submitted in support of his claim that he made at least one protected disclosure and narrowed the scope of the appeal to whether the agency retaliated against him for "engaging in whistleblowing activity" by taking or failing to take four alleged personnel actions. IAF, Tab 16. In narrowing the scope, the administrative judge implicitly found that the appellant made nonfrivolous allegations that he made at least one protected disclosure, and the protected disclosure was a contributing factor in the four alleged personnel actions, thus finding Board jurisdiction over the remaining claims. *Id.* Neither party disputes the Board's jurisdiction over these claims, nor do we discern a reason to disturb the administrative judge's implicit findings that the appellant made nonfrivolous allegations sufficient to establish Board jurisdiction over his appeal.

<u>The administrative judge failed to identify or analyze the protected disclosure or activity in which the appellant engaged and whether the disclosure or activity was a contributing factor in the personnel actions at issue.</u>

¶10 Once Board jurisdiction is established over an IRA appeal, the appellant may be entitled to corrective action if he proves by preponderant evidence that he made a protected disclosure or engaged in protected activity, and that the protected disclosure or activity was a contributing factor in a personnel action

that was taken or is to be taken against him.  5 U.S.C. § 1221(e)(1); *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016).  However, the Board will not order corrective action if the agency then proves by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure or activity.  5 U.S.C. § 1221(e)(2); *Corthell*, 123 M.S.P.R. 417, ¶ 8.

¶11      As to the May 27, 2015 nonselection, the administrative judge, citing to the agency's failure to object to her prehearing order, found that the agency conceded the appellant made what he believed to be a protected disclosure and met the knowledge/timing test.  ID at 11.  However, regardless of any concessions by the agency, "[t]he question of whether a disclosure is protected under 5 U.S.C. § 2302(b)(8) is a matter of mixed fact and law and stipulations relating to such matters are not binding."  *Jensen v. Department of Agriculture*, 104 M.S.P.R. 379, ¶ 7 (2007) (quoting *Schneider v. Department of Homeland Security*, 98 M.S.P.R. 377, ¶ 17 n.4 (2005))[6]; *cf.* 5 C.F.R. § 1201.63 (providing that parties may stipulate to matters of fact).  The administrative judge thus erred in failing to independently analyze whether the appellant proved by preponderant evidence that he made a protected disclosure, and that the protected disclosure was a contributing factor in a personnel action taken against him.

¶12      The administrative judge also failed to identify the disclosure, or disclosures, made by the appellant.  ID at 11.  Although the administrative judge found that, according to the appellant, he first raised "an issue regarding the selection process with the agency on January 9, 2015," and she discussed the appellant's meetings with his first- and second-level supervisors on that date, she

---

[6] The WPEA, which became effective on December 27, 2012, does not affect the relevant holding in the cited authority, nor does it affect the relevant holdings in the other authorities cited herein that were issued prior to the effective date of the WPEA. *See* Pub. L. No. 112-199, 126 Stat. 1465.

did not identify the content of the appellant's disclosure, nor did she identify whether the appellant made a disclosure to one or both supervisors.  ID at 3.

¶13        Our review of the record evidence reflects that the appellant has not proven by preponderant evidence that he made a protected disclosure on or before January 9, 2015.   He maintained throughout the proceedings below that on January 7, 2015, when he learned in a meeting with his first-level supervisor that he was not selected for the GS-15 supervisory ORA position, he "questioned" the "criteria and weights" she used in scoring the applicants.  IAF, Tab 8 at 12, HCD 2 (testimony of the appellant).  The appellant also maintained that, during a January 9, 2015 meeting with his first-level supervisor, he told her that he did not understand how a "non-ORA" could have been better qualified than him and that "something just didn't add up[.]"   IAF, Tab 8 at 12, Tab 24 at 34, HCD 2 (testimony of the appellant).   The appellant further alleged that, also on January 9, 2015, he met with his second-level supervisor and "shared the same concerns" he had expressed to his first-level supervisor, and he told her that he "had strong reservations that the scoring matrix was done correctly from a mathematical perspective" and that the scoring criteria and weights "could have been determined in such a way as to benefit a 'non-ORA'" that did not work in his division.   IAF, Tab 8 at 13, HCD 2 (testimony of the appellant).   The appellant asserted that he subsequently met with the deputy to the commanding general on January 26, 2015, to "outline the specifics of my concerns," and with an OIG staff member on February 6, 2015, to "go over my concerns."  IAF, Tab 8 at 14-16.

¶14        The appellant has not established that his statements to his supervisors on or before January 9, 2015, reflected a reasonable belief that his first-level supervisor had violated a law, rule, or regulation by granting unauthorized preference or treatment during the first selection process.   Under 5 U.S.C. § 2302(b)(6), an agency employee with the authority to take, recommend, or approve a personnel action is prohibited from granting any preference or advantage not authorized by

law, rule, or regulation to any employee or applicant for the purpose of improving or harming the prospects of any particular individual for employment. *McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶ 12 (2008). Title 5, section 2302(b)(12) of the U.S. Code provides that it is a prohibited personnel practice to take or fail to take a personnel action if doing so violates any law, rule, or regulation implementing or directly concerning merit system principles, which, among other things, mandate protection against personal favoritism and provide that recruitment should be from qualified individuals. *McDonnell*, 108 M.S.P.R. 443, ¶ 12; 5 U.S.C. § 2301(b)(1). The appellant's communications with his supervisors asserted that the selection process could have benefitted individuals that did not perform the same duties as he did or did not work in his division. Yet, he did not allege any specific violation of a law, rule, or regulation, nor would a disinterested observer with knowledge of the facts known to him at the time conclude that a violation of merit system principles had occurred simply because applicants with diverse qualifications scored higher than he did during the selection process. *See, e.g.*, *Gryder v. Department of Transportation*, 100 M.S.P.R. 564, ¶ 13 (2005) (finding that the appellant did not make a nonfrivolous allegation of a disclosure of wrongdoing when he did not disclose facts that led him to conclude that the agency hired candidates who retired before they could be trained and hired unqualified candidates). Such vague, conclusory allegations of wrongdoing are insufficient to constitute a protected disclosure. *Salerno*, 123 M.S.P.R. 230, ¶¶ 6-7.

¶15        However, it appears undisputed that at some point during his conversations with agency officials and an OIG staff member, the appellant disclosed that his first-level supervisor allegedly had selected one of her neighbors during the first selection process, and such a disclosure is sufficient to allege a violation of merit system principles and an abuse of authority. *See, e.g.*, *Schaeffer v. Department of the Navy*, 86 M.S.P.R. 606, ¶¶ 9-10 (2000) (holding that the appellants' disclosures that agency officials in charge of a re-engineering study conducted it

so as to reward friends and punish perceived enemies constituted a nonfrivolous allegation of a disclosure of a violation of law and an abuse of authority), *overruled on other grounds by Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶ 9 n.2 (2010), *overruled on other grounds by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 n.5 (2014). Moreover, the appellant's disclosure of information to an OIG staff member was activity protected under the WPEA. 5 U.S.C. § 2302(b)(9)(C). Thus, the appellant has proven, at a minimum, that he engaged in protected activity as of February 6, 2015, when he met with the OIG staff member. IAF, Tab 8 at 16. However, the record does not reflect the content of the disclosure, or disclosures, the appellant has alleged making before this date, and to whom and when the disclosure was made. Without evidence concerning the appellant's alleged disclosure and the extent to which the relevant agency officials were aware of the disclosure, the administrative judge could not properly evaluate the agency's evidence that it would have taken the relevant personnel actions in the absence of the disclosure; in particular, the existence and extent of any retaliatory motive. *See Belyakov v. Department of Health & Human Services*, 120 M.S.P.R. 326, ¶¶ 9-11 (2013) (finding that the administrative judge's limiting testimony regarding the appellant's disclosures resulted in an unduly restrictive view on the existence and strength of the agency's motive to retaliate).

¶16    The administrative judge similarly found that the agency conceded that the appellant met the knowledge/timing test and thus did not make independent findings as to whether the appellant's protected disclosure was a contributing factor in the personnel actions at issue. ID at 11. An appellant may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Dorney v. Department of the*

*Army*, 117 M.S.P.R. 480, ¶ 14 (2012); *see* 5 U.S.C. § 1221(e)(1). An appellant also may satisfy the knowledge prong of this knowledge/timing test by proving that the official taking the action had constructive knowledge of the protected disclosure, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). By the time of the hearing held in this matter, many agency officials were aware that the appellant had disclosed purported improprieties in the first selection process, but the record does not reflect whether each official became aware of his purported protected disclosure or activity prior to the personnel actions at issue. Thus, we are unable to ascertain whether the appellant has shown that his purported protected disclosure or activity was a contributing factor in the personnel actions. Accordingly, we vacate the administrative judge's finding that the appellant proved that his protected disclosure was a contributing factor in the relevant personnel actions and remand this matter for further proceedings.

¶17 On remand, the administrative judge shall allow the parties to further develop the record regarding the appellant's disclosures. *See Belyakov*, 120 M.S.P.R. 326, ¶ 12. The administrative judge then shall determine whether the appellant established by preponderant evidence that he made any protected disclosures prior to disclosing information to OIG, and whether the appellant's protected disclosures and/or activity were a contributing factor in the personnel actions in question. If the administrative judge finds that the appellant has met his burden, she shall supplement as necessary her findings as to whether the agency has met its burden to show by clear and convincing evidence that it would have taken the personnel actions absent the appellant's protected disclosures and/or activity.

The administrative judge properly found that the January 12, 2015 email and failure to complete a leadership assessment were not personnel actions, but she erred in finding that the decisions regarding intern assignment and conference attendance were personnel actions.

¶18     The appellant challenges the administrative judge's finding that the January 12, 2015 email from his first-level supervisor was not a personnel action on the ground that the email could serve as a basis for future disciplinary action. PFR File, Tab 1 at 5-7, 9-10. On remand, should the administrative judge confirm that the appellant did not make a protected disclosure or engage in protected activity before the email was issued, the appellant cannot prove that communications with his supervisors were a contributing factor to the January 12, 2015 email. IAF, Tab 6 at 59; *see Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 8 (2015) (providing that a disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action).

¶19     Regardless, we affirm the administrative judge's finding that the January 12, 2015 email did not constitute a threatened personnel action. To prevail in his IRA appeal, the appellant must prove that the agency threatened, proposed, took, or failed to take a "personnel action," as defined in 5 U.S.C. § 2302(a)(2)(A). 5 U.S.C. § 2302(b)(8), (b)(9); *Godfrey v. Department of the Air Force*, 45 M.S.P.R. 298, 303 (1990). The term "threatened" is afforded a broad interpretation, such that an agency does not have to state that disciplinary action is being proposed or specifically reference a particular kind of discipline to constitute a threatened personnel action. *Gergick v. General Services Administration*, 43 M.S.P.R. 651, 656-57 (1990). Nevertheless, for a statement to constitute a threat of a personnel action, the agency must take some action signifying its intent to take a personnel action. *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 12 (2015).

¶20     The appellant alleges that his supervisor threatened him with disciplinary action in her January 12, 2015 email; however, the statements to which he refers

do not signify the requisite intent to take a disciplinary action. In her email, the appellant's supervisor notified him that she did not view his behavior during their January 7 and 9, 2015 meetings as professional but was "overlooking the behavior this time[.]" IAF, Tab 6 at 59. She further stated that she expected the appellant to act professionally in the future and that "[a]ny unprofessional behavior will be handled appropriately." *Id.* The supervisor's decision not to take a disciplinary action for the behavior she deemed unprofessional and issue a general reminder that unprofessional behavior could result in disciplinary action, without more, does not indicate an intent to take a disciplinary action and thus does not constitute a personnel action under the WPEA. *See, e.g., Lith v. Department of the Treasury*, 168 F.3d 1320 (Fed. Cir. 1998) (Table) (nonprecedential) (affirming that a letter of understanding that cautioned the appellant that if he again engaged in certain behavior he could be disciplined in the future was not a personnel action)[7]; *cf. Gergick*, 43 M.S.P.R. at 657 (finding that the record of inquiry issued to the appellant constituted a threatened personnel action whereby the document, standing alone, did not necessarily constitute a threat to take a personnel action, but in light of the extensive investigation that preceded the issuance of the record of inquiry, the likelihood of disciplinary action was not insignificant).

¶21     The appellant's argument-that the email should be considered a personnel action because it could serve as the basis for future discipline-is not persuasive. *See* PFR File, Tab 1 at 6. A general statement that future misconduct might result in disciplinary action remains a truism for any employee, at any time. *See Koch v. Securities & Exchange Commission*, 48 F. App'x 778, 787 (Fed. Cir.

---

[7] Historically, the Board has been bound by precedential decisions of the U.S. Court of Appeals for the Federal Circuit. However, as a result of changes initiated by the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465, extended for 3 years in the All Circuit Review Extension Act, Pub. L. No. 113-170, 128 Stat. 1894, and eventually made permanent in the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction. *See* 5 U.S.C. § 7703(b)(1)(B).

2002) (nonprecedential) ("A wide range of agency rules, directives, and counseling measures contain the message, implicit or explicit, that failure to follow those directives or to meet expectations may have adverse consequences … [N]ot all such general statements … constitute actionable 'threats' to take adverse action within the meaning of the Whistleblower Protection Act."). To prevent a supervisor from providing a general reminder to an employee that prospective misconduct could result in disciplinary action would hamper an agency's ability to effectively manage its workforce. *Cf. Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (including the clarity with which the employee was on notice of any rules that were violated in committing an offense, or had been warned about the conduct in question, in the nonexhaustive list of factors relevant to the penalty determination in adverse action cases). Accordingly, we reject the appellant's argument that a general warning of the consequences of future misconduct, such as the one at issue here, is a personnel action protected under the WPEA.

¶22 The administrative judge found, without explanation, that the appellant's supervisors' failure to complete the leadership assessment was not a personnel action under 5 U.S.C. § 2302. ID at 16. She then found that the appellant met the knowledge/timing test as to his allegations that he was excluded from the decision to assign three interns to other branches of the division and from a decision as to which staff should attend the Department of Defense Cost Analysis Symposium. *Id.* The administrative judge properly concluded that the appellants' supervisors' failure to complete a leadership assessment was not a personnel action, but she erred in considering the two decisions from which the appellant was excluded as personnel actions. ID at 13-17.

¶23 We find that the appellant did not show that any of the three actions, separately or together, constituted a personnel action under 5 U.S.C. § 2302(a)(2)(A). The assessment and decisions at issue do not constitute one of the enumerated personnel actions set forth in 5 U.S.C. § 2302(a)(2)(A), nor has

the appellant alleged that the assessment or the decisions concern education or training that may "reasonably be expected to lead to an appointment, promotion, performance evaluation" or other action described in section 2302(a)(2)(A). 5 U.S.C. § 2302(a)(2)(A)(ix); IAF, Tab 8 at 17, Tab 9 at 29-30. Finally, the actions described do not rise to the level of a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The appellant's position description is not contained in the record and none of the actions appear to comprise a duty essential or significant to his position. *See, e.g.*, *Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 388-89 (1997) (finding that a change in the building in which the employee worked did not constitute a personnel action). Even if we consider the actions as a whole, the appellant has not shown that these three isolated, minor actions collectively had a significant impact on the overall nature or quality of his working conditions, responsibilities, or duties. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 14-15 (holding that to amount to a "significant change" under section 2302(a)(2)(A)(xii), agency actions, individually or collectively, must have a significant impact on the overall nature or quality of an employee's working conditions, responsibilities, or duties). Accordingly, we find that none of the three actions at issue constituted a personnel action and vacate the administrative judge's findings regarding the intern assignment and conference attendance decisions.

The burden remains with the agency to show by clear and convincing evidence that it would not have selected the appellant for the GS-15 supervisory ORA position in the absence of his protected activity. .

¶24      On review, the appellant challenges numerous findings the administrative judge made in concluding that the agency showed by clear and convincing evidence that it would not have selected the appellant during the second GS-15 supervisory ORA selection absent his protected activity. PFR File, Tab 1 at 13-24. In determining whether an agency has shown by clear and convincing

evidence that it would have taken the same personnel action in the absence of protected activity, the Board will consider the following factors ("*Carr* factors"): the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). In assessing whether the agency has met its burden by clear and convincing evidence, the Board must consider all the pertinent evidence in the record, and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 15 (2013); *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-68 (Fed. Cir. 2012). .

¶25    The appellant generally alleges that the administrative judge either erred in crediting certain witness testimony or misunderstood the import of certain evidence, and we find those assertions to be without merit. PFR File, Tab 1 at 13-24. The Board defers to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

¶26    In applying the *Carr* factors, the administrative judge acknowledged most of the arguments the appellant again raises on review but found that witness testimony and documentary evidence supported the agency's decisions during the second selection process and showed that while agency officials had some motive

to retaliate against the appellant, there was little evidence of retaliation. ID at 17-37. We have reviewed the record and conclude that the administrative judge's credibility determinations and factual findings regarding the selection process are detailed, well-reasoned, and supported by the record. Moreover, the appellant has not shown that the administrative judge failed to properly weigh the record evidence in concluding the agency supported its selection decision; rather, his arguments amount to mere disagreement with the qualifications the selecting official sought in a GS-15 supervisory ORA. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (observing that merely rearguing factual issues already raised and properly resolved by the administrative judge below do not establish a basis for review).

¶27        As set forth above, the administrative judge's failure to identify the appellant's protected disclosures and/or activity limited the administrative judge's ability to fully evaluate the evidence regarding the second *Carr* factor, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the relevant personnel decision. *See supra* ¶ 15. Additionally, in applying the second *Carr* factor, the administrative judge held that the appellant "fail[ed] to adequately show" how his supervisors were motivated to retaliate against him and that his belief that his first-level supervisor was biased during the second selection process was "insufficient to outweigh the agency's proffered evidence." ID at 37. Although the administrative judge discussed all the evidence concerning the supervisors' motive to retaliate against the appellant, by discussing how the appellant failed to adequately show a motive to retaliate, the administrative judge may have improperly shifted the burden of proof to the appellant in considering this factor. On remand, the administrative judge shall weigh the *Carr* factors in assessing whether the agency met its burden by clear and convincing evidence, and shall properly place the burden of proof on the agency to prove that it would have taken the same personnel actions in the absence of protected activity.

¶28      In applying the third *Carr* factor, the administrative judge found that there was little evidence of how the agency treated similarly situated employees who were not whistleblowers and stated that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." ID at 38 (quoting *Whitmore*, 680 F.3d at 1374). We agree. Nevertheless, on this issue the Board has also previously adopted the reasoning of the U.S. Court of Appeals for the Federal Circuit that "the failure to produce such evidence if it exists 'may be at the agency's peril,' and 'may well cause the agency to fail to prove its case overall.'" *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 30 (quoting *Whitmore*, 680 F.3d at 1374). In this case, it does not appear that the agency presented any evidence as to whether the agency took similar actions against similarly situated employees who were not whistleblowers. On remand, the administrative judge shall consider whether the agency affirmatively presented evidence that there were no similarly situated employees to the appellant, in which case the third *Carr* factor is removed from the analysis, or whether the agency did not present any evidence on the issue of similarly situated employees, in which case the administrative judge shall take that into consideration when determining whether the agency has met its burden of proving by clear and convincing evidence that it would have taken the same actions absent the appellant's protected activity.

¶29      In sum, on remand, the administrative judge shall identify the appellant's protected disclosures and/or activity, determine whether the protected disclosures and/or activity were a contributing factor in the personnel actions in question, and reapply the *Carr* factors with the appropriate burden of proof, incorporating the identified protected disclosures, and considering whether the agency presented any evidence of its treatment of employees similarly situated to the appellant who were not whistleblowers.

**ORDER**

¶30       For the reasons discussed above, we remand this case to the Northeastern Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:             /s/ for
                                           Jennifer Everling
                                           Acting Clerk of the Board

Washington, D.C.